**NO. 24-40704**

---

## UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

---

**GREG MURPHY, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED,**
**Plaintiff — Appellant,**

**V.**

**BEAUMONT INDEPENDENT SCHOOL DISTRICT; SHANNON ALLEN**
**Defendants — Appellees.**

---

**On Appeal from the United States District Court**
**Eastern District of Texas, Beaumont Division**
Civil Action No. 1:22-cv-00135
Honorable Marcia A. Crone, District Court Judge, Presiding

---

**BRIEF FOR DEFENDANTS-APPELLEES**
**BEAUMONT INDEPENDENT SCHOOL DISTRICT**
**AND SHANNON ALLEN**

---

**SPALDING NICHOLS LAMP LANGLOIS**
Paul A. Lamp
State Bar No. 24002443
Federal I.D. 21711
Email: plamp@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone:  (713) 993-7066
Facsimile:   (888) 726-8374

**SPALDING NICHOLS LAMP LANGLOIS**
Melissa M. Goins
State Bar No. 24074671
Federal I.D. 2089537
Email: mgoins@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone:  (713) 993-7057
Facsimile:   (888) 726-8374

*Attorneys for Defendants-Appellees*
*Beaumont Independent School District and Shannon Allen*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Greg Murphy, Plaintiff-Appellant

2. Brandon P. Monk
   THE MONK LAW FIRM
   Attorney of record for Plaintiff-Appellant

   Lawrence Watts
   Watts & Company, Lawyers, Ltd.
   Attorney of record for Plaintiff-Appellant

3. Beaumont Independent School District
   Shannon Allen
   Defendants-Appellees

4. Mr. Paul Andrew Lamp
   Ms. Melissa Maynard Goins
   SPALDING NICHOLS LAMP LANGLOIS
   Attorneys of record for Defendants-Appellees

s/Paul A. Lamp
Paul Andrew Lamp
Attorney of Record for Defendants-Appellees
Beaumont Independent School District and
Shannon Allen

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees Beaumont Independent School District (BISD or the District) and Shannon Allen (Dr. Allen) do not believe the issues raised in Appellant Greg Murphy's (Murphy) brief merit oral argument. Oral argument would not significantly add to what the parties have presented in their respective briefs, and the trial court's final judgment should be affirmed without further expenditure of this Court's and the parties' resources.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................ *ii*

STATEMENT REGARDING ORAL ARGUMENT ............................................. *iii*

TABLE OF CONTENTS .................................................................................. iv

TABLE OF AUTHORITIES ............................................................................. v

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................ 2

STATEMENT OF THE CASE .......................................................................... 4

SUMMARY OF THE ARGUMENT ................................................................ 12

ARGUMENT .................................................................................................. 14

    A. Standards of Review ............................................................................. 14

    B. The District Court Did Not Err in Excluding Paragraphs 5 and 6 of Officer Norman's Declaration ................................................................ 15

    C. The District Court Properly Granted Summary Judgment on Murphy's Due Process Claims ............................................................................... 20

        1. BISD's Policymaker ........................................................................ 22

        2. BISD's Official Policies or Custom ............................................... 24

        3. Murphy did not have any entitlement to premium pay ................. 25

    D. The District Court Properly Granted Summary Judgment on Murphy's Constitutional Claims Against BISD as he Failed to Establish Municipal Liability ............................................................................... 28

    E. The District Court Properly Granted Summary Judgment on Murphy's First Amendment Retaliation Claim ................................................... 30

        1. Murphy did not identify any policy or custom as the moving force behind his First Amendment retaliation claim ........................... 30

        2. Murphy did not speak out on a matter of public concern .............. 33

            i.    Murphy's alleged petition ............................................... 36

            ii.    Overtime inquiry ............................................................. 37

            iii.    Breakroom comments to coworkers ................................. 38

3. Murphy's interest in speaking did not outweigh BISD's interest in the efficient provision of public services ........................................41

4. BISD terminated Murphy because he violated Board policy ........42

F. The District Court Properly Granted Summary Judgment on Murphy's Fourth Amendment Malicious Prosecution Claim...................................43

1. Murphy failed to address his Fourth Amendment claim before the district court...............................................................................44

2. Murphy failed to identify an act by a policymaker or a pattern of unconstitutional conduct with respect to his Fourth Amendment claim ..........................................................................................44

3. Murphy's Fourth Amendment claim was not viable at the time Murphy was prosecuted .............................................................47

4. Murphy's prosecution was supported by probable cause .............48

5. Murphy offered no evidence that Defendants acted with malice ..50

G. The District Court Correctly Found that Dr. Allen was Entitled to Qualified Immunity ...........................................................................................52

CONCLUSION AND PRAYER ........................................................................54

CERTIFICATE OF SERVICE ..........................................................................55

CERTIFICATE OF COMPLIANCE..................................................................55

# TABLE OF AUTHORITIES

*Akin v. Q-L Invs., Inc*,
    959 F.2d 521, 531 (5th Cir. 1992) ................................................................17

*Akins v. Liberty County*,
    2014 WL 105839 (E.D. Tex. 2014) ............................................................28

*Armstrong v. Ashley*,
    60 F.4th 262 (5th Cir. 2023) ...............................................................47, 48

*Ayoub v. Tex. A & M Univ.*,
    927 F.3d 834 (5th Cir. 1991) ...............................................................36, 38

*Baldwin v. Daniels*,
    250 F.3d 943 (5th Cir. 2001) ......................................................................26

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*,
    520 U.S. 397 (1997) ...................................................................................29

*Bd. of Regents of State Colls v. Roth*,
    408 U.S. 564 (1972) ...................................................................................21

*Beattie v. Madison County Sch. Dist.*,
    254 F.3d 595 (5th Cir. 2001). ...................................................................33

*Bellard v. Gautreaux*,
    675 F.3d 454 (5th Cir. 2012) ......................................................................17

*Bennett v. City of Slidell*,
    735 F.2d 861 (5th Cir. 1984) ...............................................................25, 45

*Bradshaw v. Pittsburg Indep. Sch. Dist.*,
    207 F.3d 814 (5th Cir. 2000) ......................................................................35

*Casanova v. City of Brookshire*,
    119 F. Supp.2d 639 (E.D. Tex. 2000) ........................................................48

*Certain Underwriters at Lloyds, London v. Axon Pressure Prod., Inc.*,
    951 F.3d 248 (5th Cir. 2020) ......................................................................14

*Chavez v. Brownsville Indep. Sch. Dist.*,
    135 Fed. App'x 664 (5th Cir. 2005) ................................................36

*Clark v. America's Favorite Chicken Co.*,
    110 F.3d 295 (5th Cir. 1997) ................................................16, 17

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ................................................21

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992) ................................................24

*Connick v. Thompson,*
    563 U.S. 51 (2011) ................................................22, 35

*Cox v. City of Dallas*,
    430 F.3d 734 (5th Cir. 2005) ................................................44, 45

*Cty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ................................................51

*Cuadra v. Hous. Indep. Sch. Dist.*,
    626 F.3d 808 (5th Cir. 2010) ................................................50

*Culbertson v. Lykos*,
    790 F.3d 608 (5th Cir. 2015) ................................................23

*Doe v. Dall. Indep. Sch. Dist.*,
    153 F.3d 211 (5th Cir. 1998) ................................................23

*Dorsett v. Bd. of Trustees State Colleges & Universities*,
    940 F.2d 121 (5th Cir. 1991) ................................................34

*Duffy v. Leading Edge Prods., Inc.*,
    44 F.3d 308 (5th Cir. 1995) ................................................17

*Favela v. Collier*,
    91 F.4th 1210 (5th Cir. 2024) ................................................17

vii

*Finch v. Fort Bend Indep. Sch. Dist.*,
　　333 F.3d 555 (5th Cir. 2003) ...................................................................28

*Flock v. Scripto-Tokai Corp.*,
　　319 F.3d 231 (5th Cir. 2003) ...................................................................15

*Garcia v. Cty. of El Paso*,
　　79 F. App'x 667 (5th Cir. 2003) ...............................................................45

*Garcia v. Contreras*,
　　2008 WL 4646897 (S.D. Tex. 2008) .........................................................44

*Garza-Flores v. Mayorkas*,
　　38 F.4th 440 (5th Cir. 2022) ....................................................................17

*Gentilello v. Rege*,
　　627 F.3d 540 (5th Cir. 2010) ...................................................................21

*Gibson v. Kilpatrick*,
　　838 F.3d 476(5th Cir. 2016) ....................................................................34

*Griffin v. United Parcel Service, Inc.*,
　　661 F.3d 216 (5th Cir. 2011) ...................................................................20

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
　　996 F.2d 745 (5th Cir. 1993) ...................................................................29

*Groden v. City of Dallas*,
　　826 F.3d 280 (5th Cir. 2016) ...................................................................22

*Hand v. Gary*,
　　838 F.2d 1420 (5th Cir. 1988) .................................................................49

*Hare v. City of Corinth, Miss.*,
　　135 F.3d 320 (5th Cir. 1998) ...................................................................53

*Harris v. Victoria Indep. Sch. Dist.*,
　　168 F.3d 216 (5th Cir. 1999) ..............................................................33, 42

*Harrison v. Young*,
　　48 F.4th 331 (5th Cir. 2022) ...............................................................26

*Hill v. Silsbee Indep. Sch. Dist.*,
　　933 F. Supp. 616 (E.D. Tex. 1996) ....................................................21

*Illinois v. Gates*,
　　462 U.S. 213 (1983)............................................................................48

*James v. Cleveland Sch. Dist.*,
　　45 F.4th 860 (5th Cir. 2022) ...............................................................26

*James v. Tex. Collin Cty.*,
　　535 F.3d 365 (5th Cir, 2008) ...............................................................53

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
　　379 F.3d 293 (5th Cir. 2004) ...............................................................23

*Johnson v. Moore*,
　　958 F.2d 92 (5th Cir. 1992) .................................................................25

*Jones v. Gulf Coast Rest. Grp., Inc.*,
　　8 F.4th 363 (5th Cir. 2021) ..................................................................17

*Jett v. Dall. Indep. Sch. Dist.*,
　　491 U.S. 701 (1989).......................................................................22, 51

*Kaley v. United States*,
　　571 U.S. 320 (2014)............................................................................48

*Kennedy v. Tangipahoa Parish Library Bd. of Control*,
　　224 F.3d 359 (5th Cir. 2000) ...............................................................35

*Kipps v. Caillier*,
　　197 F.3d 765 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000) .........53

*Klocke v. Watson*,
　　2021 WL 5871884 (5th Cir. 2021)......................................................17

*Ky. Dep't of Corrections v. Thompson*,
    490 U.S. 454 (1989)................................................................................22

*Lane v. Franks*,
    573 U.S. 228 (2014)................................................................................34

*Leffall v. Dall. Indep. Sch. Dist.*,
    28 F.3d 521 (5th Cir. 1994) ...................................................................21

*Lewis v. Univ. of Tex. Med. Branch of Galveston*,
    665 F.3d 625 (5th Cir. 2011) .................................................................21

*Lifecare Hosps., Inc. v. Health Plus of La., Inc.*,
    418 F.3d 436 (5th Cir. 2005). ..........................................................15, 20

*Littell v. Hous. Indep. Sch. Dist.*,
    894 F.3d 616 (5th Cir. 2018) .................................................................22

*Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*,
    942 F.3d 258 (5th Cir. 2019) ...........................................................23, 31

*Martinez v. Maverick Cty.*,
    507 F. App'x 446 (5th Cir. 2013) ..........................................................25

*Martinez v. Nueces Cty.*,
    71 F.4th 385, 389 (5th Cir.2023), *cert. denied*, 144 S. Ct. 1010 (2024) ...... 47

*Maryland v. Pringle*,
    540 U.S. 366 (2003)................................................................................50

*Meadowbriar Home for Child., Inc. v. Gunn*,
    81 F.3d 521 (5th Cir. 1996) ...................................................................23

*McClendon v. City of Columbia*,
    305 F.3d 314 (5th Cir. 2002) .................................................................51

*McMillian v. Monroe Cty.*,
    520 U.S. 781 (1997)................................................................................23

x

*M. D. ex rel. Stukenberg v. Abbott,*
    907 F.3d 237 (5th Cir. 2018) ........................................................25

*Monell v. Dep't of Soc. Servs. of City of N.Y.,*
    436 U.S. 658 (2018) ...........................................................22, 24, 28

*Montgomery Indep. Sch. Dist. v. Davis,*
    34 S.W.3d 559 (Tex. 2000) ..........................................................27

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977)......................................................................34

*National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,*
    40 F.3d 698 (5th Cir. 1994) ..........................................................37

*O'Neal v. Alamo Cmty. College Dist.,*
    2010 WL 376602 (W.D. Tex. 2010) .............................................41

*Perry v. Sindermann,*
    408 U.S. 593 (1972)......................................................................40

*Pickering v. Bd. of Educ.,*
    391 U.S. 563 (1968)................................................................40, 44

*Pineda v. City of Hous.,*
    291 F.3d 325 (5th Cir. 2002) ........................................................45

*Piotrowski v. City of Hous.,*
    237 F.3d 567, 579 (5th Cir. 2001), *cert. denied,* 534 U.S. 820 (2001)..22, 25,
    28

*Powell v. The Dallas Morning News L.P.,*
    776 F. Supp. 2d 240 (N.D. Tex. 2011) .........................................18

*Ratliff v. Aransas County,*
    948 F.3d 281 (5th Cir. 2020) ...................................................14, 15

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992)......................................................................40

*Rivera v. Hous. Indep. Sch. Dist.*,
    349 F.3d 244 (5th Cir. 2003) ...............................................23, 29, 31, 44, 45

*Robinson v. Midland Cty.*,
    80 F.4th 704 (5th Cir. 2023) ...............................................................47

*Salge v. Edna Indep. Sch. Dist.*,
    411 F.3d 178 (5th Cir. 2005) ...............................................................35

*Short v. Klein Indep. Sch. Dist.*,
    Dkt. No. 025-R10-01-2021 (Comm'r Educ. 2021) ........................................27

*Skotak v. Tenneco Resins, Inc.*,
    953 F.2d 909 (5th Cir. 1992) ...............................................................14

*Stem v. Gomez*,
    813 F.3d 205 (5th Cir. 2016) ...............................................................24

*Terrell v. Univ. of Tex. Sys. Police*,
    792 F.2d 1360 (5th Cir. 1982) ..............................................................35

*Terry Black's Barbecue, L.L.C. v. State Auto Mut. Ins. Co.*,
    22 F.4th 450 (5th Cir. 2022) ...............................................................44

*Thomas v. Beaumont Indep. Sch., Dist.*,
    627 Fed. App'x. 332 (5th Cir. 2015) ........................................................38

*Thompson v. Clark*,
    596 U.S. 36 (2022) ......................................................................47, 48

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*,
    7961 F.3d 409 (5th Cir. 2014) ..............................................................14

*Victor v. McElveen*,
    150 F.3d 451 (5th Cir. 1998) ...............................................................41

*Virginia v. Black*,
    538 U.S. 343 (2003) .......................................................................41

*Wallace v. Texas Tech Univ.*,
  80 F.3d 1042 (5th Cir. 1996) ..................................................................37, 45

*Washington v. Texas*,
  2024 WL 1470903 (S.D. Tex. 2024) ...............................................................17

*Webb v. Town of Saint Joseph*,
  925 F.3d 209 (5th Cir. 2019) ..........................................................................23

*Webster v. City of Hous.*,
  735 F.2d 838 (5th Cir. 1984) ..........................................................................45

*Wigginton v. Jones*,
  964 F.3d 329 (5th Cir. 2020) .....................................................................21, 26

*Zarnow v. City of Wichita Falls*,
  614 F.3d 161 (5th Cir. 2010) .....................................................................22, 24

## FEDERAL STATUTES

42 U.S.C. § 1983 ............................................ 11, 12, 20, 22, 24, 28, 31, 47, 48, 52

## STATE STATUTES

Texas Education Code § 11.151(b) ....................................................23, 27, 31, 51

Texas Education Code § 37.081 ........................................................................51

Texas Penal Code § 22.07 .................................................................................49

## OTHER AUTHORITIES

Federal Rule of Appellate Procedure 32(a)(5) .................................................55

Federal Rule of Appellate Procedure 35(a)(6) .................................................55

Federal Rule of Appellate Procedure 32(a)(7)(B) ...........................................55

Federal Rule of Appellate Procedure 32(f) ......................................................55

Federal Rule of Civil Procedure 56(c)(2) .........................................................16, 17

Federal Rule of Civil Procedure 56(c)(4) .............................................................16

Fifth Circuit Rule 28.2.1 ..................................................................................... ii

NO. 24-40704

---

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**GREG MURPHY, INDIVIDUALLY AND ON BEHALF OF ALL OTHER
SIMILARLY SITUATED,**
**Plaintiff — Appellant,**

**V.**

**BEAUMONT INDEPENDENT SCHOOL DISTRICT; SHANNON ALLEN**
**Defendants — Appellees.**

---

**On Appeal from the United States District Court
Eastern District of Texas, Beaumont Division**
Civil Action No. 1:22-cv-00135
Honorable Marcia A. Crone, District Court Judge, Presiding

---

**BRIEF FOR DEFENDANTS-APPELLEES
BEAUMONT INDEPENDENT SCHOOL DISTRICT
AND SHANNON ALLEN**

---

TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

Defendants-Appellees Beaumont Independent School District and Shannon Allen file their Brief in support of the affirmance of the September 25, 2024, Final Judgment of the United States District Court for the Eastern District of Texas, Beaumont Division.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court abused its discretion in excluding paragraphs 5 and 6 of Officer Shanter Norman's declaration where the contents of those paragraphs were wholly conclusory and speculative.

2.      Whether the district court erred in granting summary judgment on Murphy's constitutional due process claims where he failed to demonstrate that he had a protected property interest in "premium pay" under BISD's Board policy DEA (Local).

3.      Whether the district court erred in granting summary judgment on Murphy's constitutional due process claims where he failed to demonstrate that he suffered a constitutional deprivation as he did not identify any evidence that BISD's final policymaker interpreted the phrase "emergency closure" in BISD Board policy to encompass the procedure implemented by BISD in response to COVID-19 and thus failed to show that he held a protected property interest in "premium pay."

4.      Whether the district court erred in granting summary judgment on Murphy's First Amendment retaliation claim where he failed to identify an official BISD policy or custom of unconstitutional conduct that was known to or accepted by BISD's final policymaker and served as the moving force behind his alleged violation and further failed to demonstrate that he spoke out on a matter of public concern or that he was terminated for doing so.

2

5.      Whether Murphy forfeited his Fourth Amendment malicious prosecution claim by failing to address this claim before the district court, and alternatively, whether the district court correctly disposed of this claim on the merits.

6.      Whether the district court erred in finding that Dr. Allen was entitled to qualified immunity where Murphy failed to demonstrate a constitutional violation in the first place and further failed to show that Dr. Allen took any action in violation of Murphy's First and/or Fourth Amendment rights.

## STATEMENT OF THE CASE

### *Murphy's Employment with BISD*

BISD is a public school district located in Jefferson County, Texas that is governed by a seven-member Board of Trustees (the Board) who, as a body corporate, oversee the management of the District and ensure that the Superintendent implements and monitors the District's plans, procedures, programs, and systems in order to achieve desired results in District operations. ROA.852. BISD's Board is the sole and exclusive policymaker for the District. *Id*. Murphy began working as a carpenter for BISD's Maintenance Department in January 2019. ROA.591, 608. Murphy remained employed by BISD as a carpenter until his termination in March 2022. ROA.592, 737-740.

### *BISD Engages in a Period of Modified Operation During COVID-19*

In March 2020, the nation and State of Texas were declared to be in a state of disaster due to the potential spread of COVID-19. ROA.852-853. Due to the District's substantial public interest in protecting the health and safety of its students, staff, and community, the District took immediate steps in response to COVID-19 to maintain instructional continuity and provide meals to students. ROA.852. The District also sought to retain its employees, reduce turnover, increase morale, and facilitate the return to duty of employees from modified operations in the ever-changing situation that the District faced. *Id*. During the spring of 2020, BISD closed

4

its buildings and offices to the public, but all employees were asked to continue working to support the District during its period of modified operations. ROA.853. Some BISD employees continued to report to work at BISD buildings, offices, and campuses, and the District took steps to deep clean the facilities to protect those employees. *Id.*

On March 24, 2020, BISD's Board held a public meeting and in response to the COVID-19 pandemic, approved a Resolution delegating to BISD's Superintendent, Dr. Allen, certain authority to efficiently and effectively prepare the District in response to the various disaster declarations. ROA. 853, 860-872. The Resolution authorized Dr. Allen, in pertinent part, to make the following decisions and determinations, in the place of the Board:

(1) The authority to act *in the place of the Board of Trustees* under Board Policy DEA (Local) and thus *make all decisions regarding the payment of employees during an emergency closure or period of modified operations*, to implement the provisions of Board Policy DEA (Local), and to make determinations regarding the purpose of any such expenditures;

(2) The authority to make decisions regarding the *compensation, if any, of exempt and nonexempt employees who may be required to report to work or work remotely during an emergency closure or period of modified operations* and to implement those decisions;

(3) The authority to determine work days and hours, if any, for all employees during the closure or period of modified operations.

ROA.853, 871 (emphasis added).

5

Pursuant to the authority delegated to Dr. Allen by BISD's Board, Dr. Allen determined that premium pay would be paid to nonexempt employees who engage in work that required consistent, prolonged exposure to the public during the District's period of modified operations. ROA.853, 857-858. Those employees who received premium pay included child nutrition workers and other nonexempt employees who assisted in distributing food to the public including paraprofessionals, aides, security personnel, and law enforcement personnel. ROA.853, 874-892. Premium pay was not determined by whether an employee held an "essential" job but rather whether the employee was performing work that required consistent and prolonged exposure to the public. ROA.853.

During the spring of 2020 the District did not undergo an emergency closure for a disaster pursuant to BISD Board policy DEA (Local); rather the District engaged in *a period of modified operations* in response to the COVID-19 pandemic. ROA.853. Although District buildings and offices were closed to the public, several District employees continued to report to their assigned work locations a minimum of five (5) hours a day. *Id*. Those employees who worked a minimum of 5 hours a day according to the District's duty day calendar and completed all assignments from their supervisors received full compensation for an eight (8) hours day despite only working 5 hours. *Id*.

6

The District's period of modified operations during the COVID-19 pandemic differed from prior weather-related emergency closures where no operations took place for some period of time. ROA.853. Conversely, during COVID-19, the District remained open to employees and continued to operate, albeit in a modified capacity, to ensure instructional continuity and meal distribution to students. ROA.853.

### The Beaumont Teachers Association Grievance

In June 2020, Larry Josh filed a grievance on behalf of members of the Beaumont Teacher's Association seeking retroactive "enhanced COVID-19 pay" or premium pay. ROA.591, 704-705. Thereafter, other employees joined, including Murphy, who filed an Employee Complaint Form on July 28, 2020, alleging he was entitled to premium pay from March 23, 2020 to May 28, 2020. ROA.707-708, 914-916. Murphy identified Mr. Josh as his representative and both Murphy and Mr. Josh, as Murphy's representative, executed the Employee Complaint Form. *Id*. Following a hearing, BISD's Executive Director of Human Resources, Derwin Samuels, Jr., issued a Level II Decision and denied the employees' request for premium pay, explaining that the determination for premium pay was not based on whether an employee held an "essential status" but instead whether the employee was engaging in work that required consistent, prolonged exposure to the public in line with the Board's March 2020 Resolution and Dr. Allen's directive. ROA.591, 709-713, 853, 870-872.

7

On December 2, 2020, Dr. Allen executed a Resolution and Release Agreement (the Agreement) between BISD and the Beaumont Teacher's Association on behalf of the employees, including Murphy, who joined the grievance. ROA.853-854, 894-897. The Agreement, in pertinent part, provided that the employees would dismiss with prejudice the grievance filed by Mr. Josh on behalf of the Beaumont Teacher's Association and those employees listed in Exhibit A, including Murphy. ROA.894-896. The Agreement also provided that the employees would release and forever discharge the District, its Board, and employees from all actions and causes that may have arisen at any time up to and including the date of the execution of the Agreement and in exchange for the consideration, the District agrees to pay employees a one-time lump sum settlement via check. *Id*. In accordance with the Agreement, the District issued a check to Murphy in the amount of $819.06. ROA.853-854, 899-900. Murphy did not cash his check. ROA.854, 917.

***Murphy's Poor Work Performance***

On August 13, 2021, BISD's Assistant Director of Maintenance, Mark McClelland, issued a misconduct notice to Murphy due to his poor work performance. ROA.746, 750-751. Specifically, Mr. McClelland noted that Murphy spent 33 hours assembling several media carts which was substandard for a competent craftsman. ROA.746, 750-751. Thereafter, Murphy filed a Level I

8

grievance requesting that the misconduct notice be removed from his file. ROA.746, 774-779. On September 15, 2021, BISD's Director of Maintenance and Operations, Allen Devault, served as the Level I Hearing Officer and issued a Level I Decision denying Murphy's request to remove the misconduct notice from his file. ROA.746-747, 781-788. Murphy appealed Mr. Devault's Decision. ROA.809, 826-828. BISD's Human Resources Manager, Brandon Basinger, served as the Level II Hearing Officer and thereafter, issued his Level II Decision, which affirmed Mr. Devault's Level I Decision. ROA.809, 830-833.

***Murphy is Arrested and Terminated for Violating District Board Policy***

On February 2, 2022, Mr. Devault received information from two employees, Donald "Ben" Chenault, and Chad Thomas, that Murphy made a threat to blow up BISD's Maintenance Department—specifically, that Murphy said he would strap a bomb to a remote control car. ROA.747. Mr. Devault secured written statements from the employees, contacted BISD's Police Department to report Murphy's threat, and provided the written statements to BISD's Human Resources Department. ROA.747, 809, 844-845. BISD Police Officer Shanter Norman met with several witnesses who confirmed that Murphy said "he would drive [a] remote control car in the parking lot and blow this mother fucker up" when referring to BISD's Maintenance Department. ROA.794, 844. Murphy's statements caused an

immediate reaction of fear and as a result, Murphy was arrested for making a terroristic threat. ROA.794.

Mr. Basinger issued a letter to Murphy notifying him that he was being placed on administrative leave while an investigation was conducted into allegations that he made a terroristic threat. ROA.809, 835-838. Mr. Basinger's letter stated in part that "[a]s a District employee, your full cooperation during the investigation is expected. You are directed to make yourself available during normal work hours." ROA.809, 835. Murphy refused to cooperate in the District's investigation. ROA.591-592, 809-810, 840-847. Mr. Samuels sent Murphy an email detailing the District's policy requiring employee cooperation during investigations and directing him to comply. ROA.591-592, 809-810, 846. Murphy still refused to comply. ROA.591-592, 809-810.

After considering all of the information, Mr. Basinger found that Murphy made a terroristic threat to District employees and facilities in violation of Board policy DH (Local), DH (Exhibit), and the Educator's Code of Ethics Standard 1.9, which prohibits employees from making "threats of violence against school district employees, school board members, students, or parents of students." ROA.809-810, 813-817, 819-821, 840-847. Mr. Basinger then submitted his investigation to Mr. Samuels for review and consideration and recommended the termination of Murphy's employment. ROA.810, 840-847. On March 12, 2022, after reviewing Mr.

Basinger's investigation report, Mr. Samuels sent a letter to Murphy summarizing the allegations and the investigation and notifying Murphy that his employment with BISD was terminated effective immediately for two independent reasons: making a threat to blow up BISD's Maintenance Department and refusing to comply and/or cooperate with a District investigation. ROA.592, 725-726.

***Murphy's Lawsuit***

On March 31, 2022, Murphy filed his Original Complaint in the Eastern District of Texas, Beaumont Division, alleging that BISD and Dr. Allen violated his substantive and procedural due process rights. ROA.10-25. Murphy amended his Complaint three times (ROA.63-78, 258-274, 454-472), wherein he alleged that Defendants violated four constitutional rights via Section 1983: (1) substantive due process rights by arbitrarily and capriciously denying his request for premium pay; (2) procedural due process rights by depriving him of a protected property interest without proper procedural safeguards in place; (3) First Amendment retaliation for speaking out against BISD; and (4) Fourth Amendment malicious prosecution by arresting him under a fabricated bomb threat. ROA.454-472.

Defendants filed an Answer, denying the allegations set forth in Murphy's Third Complaint and Dr. Allen pleaded the affirmative defense of qualified immunity. ROA.496-507. On April 1, 2024, Defendants moved for summary judgment on all the claims asserted in Murphy's Third Complaint. ROA.551-588.

11

Dr. Allen also moved for summary judgment on the grounds of qualified immunity. ROA.586-587. The district court granted Defendants' Motion for Summary Judgment finding that Murphy failed to raise a genuine dispute of material fact on any of his claims. ROA.1155-1183.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's summary judgment order and final judgment in Appellees' favor as Murphy fails to remotely identify in his brief any grounds constituting reversible error. First, this Court should affirm the district court's decision to exclude paragraphs 5 and 6 of Officer Shanter Norman's declaration because those paragraphs were wholly conclusory and speculative in that they relied on inferences without setting forth the facts supporting those inferences.

Regarding Murphy's due process claims, the summary judgment record demonstrated that Dr. Allen, via delegated authority from BISD's final policymaker—BISD's Board of Trustees, made reasonable compensation decisions for nonexempt employees whose jobs required consistent, prolonged exposure to the public during the District's period of modified operations, and since Murphy did not perform that type of work for BISD, he did not have a protected property interest in premium pay pursuant to Board policy DEA (Local).

Regarding Murphy's Section 1983 municipal liability claim, Murphy failed to provide any evidence demonstrating that he suffered a constitutional deprivation as

there was no evidence proving that BISD or Dr. Allen interpreted the phrase "an emergency closure" in BISD Board policy to encompass the procedure implemented by BISD in response to COVID-19 and thus failed to show that he held a protected property interest in "premium pay."

As to Murphy's First Amendment retaliation claim, Muphy failed to identify, with reasonable particularly, any evidence of an official policy or custom that gave rise to his injury or that he was speaking on matters of public concern. Furthermore, Murphy did not speak on a matter of public concern and was terminated for violating Board policy, namely making a terroristic threat against BISD facilities, staff, and students and refusing to cooperate in the District's investigation.

Next, Murphy failed to address his Fourth Amendment malicious prosecution claim before the district court and thus forfeited his claim. Assuming that Murphy did not forfeit his Fourth Amendment claim, this Court should nevertheless affirm summary judgment on that claim because Murphy's arrest was supported by a probable cause affidavit and there was no evidence of malice by the Defendants.

Finally, the district court correctly found that Dr. Allen was entitled to qualified immunity because Murphy failed to demonstrate any constitutional violation or that Dr. Allen took any action that violated Murphy's constitutional rights.

13

**ARGUMENT**

Murphy alleges the district court erred in granting summary judgment on all of his constitutional claims. Murphy Brief at pp. 12-15. Murphy further alleges that the district court "abused its discretion by excluding Officer Norman's declaration as 'conclusory' and 'speculative'" because it prejudiced Murphy's ability to establish essential elements of his claims. Murphy Brief at p. 15. The summary judgment record demonstrates that the district court did not err in granting summary judgment, and furthermore, did not abuse its discretion by excluding portions of Officer Norman's declaration. Murphy's case was properly dismissed and for the reasons explained hereinafter, the district court's judgment should be affirmed.

**A.**     ***Standard of Review.***

"An appeal of a summary judgment presenting evidentiary issues raises two levels of inquiry." *Ratliff v. Aransas County*, 948 F.3d 281, 286 (5th Cir. 2020) (alteration accepted) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)). "First, we review the district court's evidentiary rulings for abuse of discretion." *Id.*; *see also U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 7961 F.3d 409, 430 (5th Cir. 2014). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Certain Underwriters at Lloyds, London v. Axon Pressure Prod., Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (citation omitted).

14

Once the summary judgment record is defined, "we review *de novo* whether summary judgment was appropriately granted." *Ratliff*, 948 F.3d at 286. Summary judgment should not be granted unless by "viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003). This Court considers all evidence in the record to ascertain whether there is a dispute of material fact but does not determine credibility or weigh evidence; rather, this Court draws "all reasonable inferences in favor of the nonmoving party." *Id.* Importantly, this Court "may affirm the district court's ruling on any grounds supported by the record" and which are consistent with these standards. *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

**B.   The District Court Did Not Err in Excluding Paragraphs 5 and 6 of Officer Norman's Declaration.**

Murphy submitted a declaration from a witness named Shanter Norman with his Response to Defendants' Motion for Summary Judgment. ROA.1073-1075. Thereafter, Defendants moved to strike and/or object to Norman's declaration. ROA.1090-1103. The district court issued a Memorandum and Order on Defendants' Motion to Strike, which allowed Norman to amend his declaration to cure a facial invalidity but reserved the Court's ruling on Defendants' objections to Norman's declaration until the Motion for Summary Judgment was decided.

15

ROA.1153-1154. Thereafter, in ruling on Defendants' Motion for Summary Judgment, the district court sustained Defendants' objections to paragraphs 5 and 6 of Norman's declaration. ROA.1174.

Murphy erroneously argues that the district court excluded the entirety of Norman's declaration, which negatively impacted his ability to establish elements of his First and Fourth Amendment claims and thus negatively affected his "substantial" rights. Murphy Brief at pp. 52-53. It is important to note that the district court did not exclude Norman's entire declaration as represented by Murphy, but rather only paragraphs 5 and 6. ROA.1174.

Whether an affidavit is competent summary judgment evidence is governed by the requirements of Rule 56(c)(4). Fed. R. Civ. P. 56(c)(4). Under Rule 56(c)(4) an affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. *Id*. If the affidavit does not satisfy one or more of these requirements, the opposing party may object that the affidavit "cannot be presented in a form that would be admissible in evidence" pursuant to Rule 56(c)(2). Fed. R. Civ. P. 56(c)(2). The contents of summary judgment declarations cannot be conclusory or based upon mere information and belief but rather the facts must be specific and otherwise admissible as evidence at trial. *Clark v. America's Favorite Chicken Co*., 110 F.3d

295, 297 (5th Cir. 1997); *Duffy v. Leading Edge Prods., Inc*., 44 F.3d 308, 312 (5th Cir. 1995).

A party may object to materials offered as summary judgment evidence when the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2); *Klocke v. Watson*, 2021 WL 5871884, at *15 (5th Cir. 2021); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). If the objections are sustained, the court disregards only those portions of the declaration that contain objectionable material while considering the content that remains. *Garza-Flores v. Mayorkas*, 38 F.4th 440, 445 (5th Cir. 2022) (citing *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992)). Objections should be considered by the court in evaluating whether the nonmovant has produced legally sufficient evidence for purposes of summary judgment. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (noting that, to survive a motion for summary judgment, the nonmovant must produce sufficient evidence to support a verdict in the nonmovant's favor). Moreover, an assertion in a declaration is conclusory if it relies on inferences without setting forth the facts that support those inferences. *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024); *Washington v. Texas*, 2024 WL 1470903, at *4 (S.D. Tex. 2024).

Norman's declaration contained statements in paragraphs 5 and 6 that were wholly conclusory and speculative (ROA.1073-1074), which made those statements

17

improper summary judgment evidence and insufficient to create a question of fact. *See Powell v. The Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 246 (N.D. Tex. 2011) (disregarding speculative, conclusory, and hearsay evidence in deciding defendant's motion for summary judgment). Specifically, paragraphs 5 and 6 of Norman's declaration were unsupported by specific facts demonstrating he had personal knowledge. Paragraph 5 states that it was "clear" to Norman (without explaining how it is "clear") that "the [D]istrict retaliated against Mr. Murphy in violation of his First Amendment Rights" and that "[s]ince Mr. Murphy's arrest I have also been the victim of 1st Amendment Retaliation by the District." ROA. 1073. Paragraph 6 states that BISD's "conduct" was a "pattern and practice of retaliatory treatment of employees by the District that [sic] speak on matters of public concern." ROA.1074.

Norman did not lay *any* foundation that he had personal knowledge regarding Murphy's termination. ROA.1073-1074. Norman did not indicate that in his former role as a police officer for BISD's Police Department he handled any type of human resources responsibilities for BISD's Maintenance Department employees, that he had any knowledge regarding hiring or firing practices within BISD's Maintenance Department, or whether he was personally involved in Murphy's termination from the District. *Id*. Norman also did not set forth facts supporting his conclusion that there was a "pattern and practice of retaliatory treatment at BISD." ROA.1073-1074,

18

1173. Additionally, Norman failed to identify any other factual scenarios in which BISD had retaliated against its employees, nor did he discuss the facts underlying the alleged retaliation he personally experienced. *Id*. Instead, he concluded, without factual support, that it was "clear" to him that BISD retaliated against Murphy and that BISD had a pattern of engaging in unconstitutional behavior related to the First Amendment. *Id*.

Murphy contends that but for the district court's exclusion of Norman's declaration, he could prove his First and Fourth Amendment claims. Murphy Brief at pp. 52-53. Specifically, that paragraphs 5 and 6 demonstrate a "custom or practice of retaliating against employees who speak on matters of public concern" under the First Amendment and because the District "retaliated against Mr. Murphy" that shows malice under the Fourth Amendment. *Id*. Even if the district court did not exclude paragraphs 5 and 6 of Norman's declaration, Murphy still failed to show that such incidents "are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of [school district] employees.'" ROA. 1174. There is absolutely no evidence in the record of Norman's own personal experience or any other experience at BISD to establish a "pattern or practice." Furthermore, Norman's declaration only referenced

19

Murphy's First Amendment claim and fails to reference any Fourth Amendment claim. ROA.1073-1074.

In sum, the district court did not abuse its discretion in sustaining Defendants' objections to paragraphs 5 and 6 of Norman's declaration as those paragraphs were wholly conclusory and speculative.

**C.     *The District Court Properly Granted Summary Judgment on Murphy's Due Process Claims.***

Defendants moved for summary judgment on Murphy's constitutional due process claims. ROA.570-573. As the record supports judgment in Defendants' favor on these claims, this Court may affirm the district court's final judgment on this record. *See Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 221 (5th Cir. 2011) (quoting *Lifecare Hosps., Inc.*, 418 F.3d at 439).

Here, Murphy alleges that he had a property interest in premium pay under BISD's Board policy DEA (Local) and that Defendants violated his substantive due process rights by arbitrarily and capriciously denying his request for premium pay and his procedural due process rights by depriving him of a protected property interest without proper procedural safeguards in place. Murphy Brief at pp. 20-22; ROA.978-981. In order to establish liability for a constitutional violation under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that he alleged deprivation was committed by a person acting under color of state law. *Leffall v.*

20

*Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). In order to invoke due process protections, a plaintiff must identify a protected life, liberty, or property interest and show that defendants' actions resulted in a deprivation of that interest. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

As to his substantive due process claim, Murphy was required to establish that he had a clearly established property interest in his receipt of premium pay from BISD and that Defendants' deprivation of that interest was arbitrary and capricious. *Lewis v. Univ. of Tex. Med. Branch of Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Procedural due process entitles an employee with a property interest in certain procedural rights. *See Hill v. Silsbee Indep. Sch. Dist.*, 933 F. Supp. 616, 624-25 (E.D. Tex. 1996) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985)). Both substantive and procedural due process require the existence of a protected liberty or property interest. *Wigginton v. Jones*, 964 F.3d 329, 339 (5th Cir. 2020) (noting that property interests may be established in the same manner for both substantive and procedural due process claims).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it…[he] must, instead have a legitimate claim of entitlement to it. *Bd. of Regents of State Colls v. Roth*, 408 U.S. 564, 577 (1972). In determining whether statutes, regulations, or the like limit official discretion, the Supreme Court has explained that the court is to look for "'explicitly mandatory

21

language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989).

For Section 1983 liability to attach to a local governmental entity, like BISD, a plaintiff must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (2018)); *see Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 623 (5th Cir. 2018). As the district court rightfully determined (ROA.1161-1162), regardless of whether the claim involves due process, First Amendment, or Fourth Amendment violations, the key to recovery against a governmental entity under Section 1983 is demonstrating the deprivation of a constitutional right pursuant to an official policy or custom. *See Connick v. Thompson,* 563 U.S. 51, 60-61 (2011); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

1. BISD's Policymaker.

Proof of a responsible policymaker is a necessary element for the imposition of governmental liability under Section 1983. *Connick*, 563 U.S. at 60-61; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2001), (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989));

22

*see Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity. *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Culbertson*, 790 F.3d at 624. Under Texas law, final policymaking authority for an independent school district rests with its board of trustees. *See Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing TEX. EDUC. CODE § 11.151(b)); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Generally, a school district is not liable for the actions of a nonpolicymaking employee, such as the superintendent. *See Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998); *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996); *Jett*, 7 F.3d at 1245. The delegation of authority may be express or implied. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019).

Here, the final policymaker, BISD's Board, expressly delegated a portion of its final policymaking authority to Dr. Allen pursuant to a Resolution approved by BISD's Board during a public Board meeting on March 24, 2020. ROA.853, 860-872. As the district court rightfully pointed out, the Board's Resolution by its very terms empowered Dr. Allen to act "in the place of" the Board. ROA. 870-871, 1164. Therefore, the Resolution permitted Dr. Allen to make final decisions specifically *regarding employee compensation and interpretation of Board policy DEA(Local)*

23

thereby making her the *final* policymaking authority over the subject matter outlined in the Resolution for purposes of Section 1983. ROA. 870-872, 1164.

2. BISD's Official Policies or Custom.

Under Section 1983, a plaintiff may directly sue a local governmental entity where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690; *see Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992); *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016); *Zarnow*, 614 F.3d at 166. A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *accord Stem*, 813 F.3d at 210; *Zarnow*, 614 F.3d at 166. This Court has defined an official policy or custom as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

24

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Furthermore, Section 1983 demands that "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff . . . ." *Piotrowski*, 237 F.3d at 579; *accord M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 253-54 (5th Cir. 2018); *Martinez v. Maverick County*, 507 F. App'x 446, 448 (5th Cir. 2013) (explaining that "wide-ranging conclusory allegations" fail to identify an injury-causing policy).

In his brief, Murphy identifies three purported policies as the "moving force" supporting his due process claims: (1) language in Board policy DEA(Local) regarding emergency closures; (2) the March 24, 2020 Resolution wherein the Board delegated to Dr. Allen authority to make certain decisions regarding compensation during an emergency closure or period of modified operations; and (3) Dr. Allen's decision to provide premium pay to a limited number of employees. Murphy Brief at p. 30; ROA.976, 978-981.

3. <u>Murphy did not have any entitlement to premium pay.</u>

Murphy contends that "[t]he record demonstrates that [he] was a nonexempt employee who was required to work during an emergency closure for a disaster as contemplated by BISD Board Policy DEA (LOCAL), thus establishing his legitimate claim of entitlement to premium pay" and merely cites to the policy as

support. Murphy Brief at p. 17. Much like Murphy's summary judgment Response (ROA.961-988), his record citations are either nonexistent or misleading.

A written policy may, but does not necessarily, create a constitutionally protected property interest. *See Wigginton*, 964 F.3d at 336. A policy, however, does not create a constitutionally protected entitlement if government officials may use their discretion in granting or denying a benefit under the policy. *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 866 n.3 (5th Cir. 2022) (citing *Baldwin v, Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)); *Harrison v. Young*, 48 F.4th 331, 341 (5th Cir. 2022). As the district court correctly pointed out, the policy at issue—DEA(Local)—provides that nonexempt employees who are required to work *during an emergency closure for a disaster* shall be entitled to premium pay. ROA.858. The policy contains three substantive predicates before an employee is entitled to premium pay; (1) nonexempt employee; (2) required to work; and (3) during an emergency closure for a disaster. *Id*. The summary judgment record demonstrates that Murphy did not satisfy these three predicates because BISD did not undergo an emergency closure. ROA.852-853, 870-872, 1179. Furthermore, pursuant to the Board's delegated authority, Dr. Allen made the decision to issue premium pay to those employees whose work required consistent, prolonged exposure to the public as those employees had a heightened risk of exposure to COVID-19 by virtue of their direct interaction with the public. ROA.853, 870-872. Murphy's Brief fails to move the needle away from

the inescapable conclusion that he cannot demonstrate that all predicates contained in BISD's Board policy DEA(Local) were satisfied with respect to his employment, and thus he cannot establish a legitimate property interest in premium pay.

Murphy's attempt to argue that BISD interpreted its own policy incorrectly is futile. "Because school boards have 'the exclusive power and duty to govern and oversee the management of the public schools of the district,' Tex. Educ. Code 11.151(b), under the statutory scheme a school board must be the ultimate interpreter of its policy, subject to the limits established by the Legislature in its provisions for administrative and judicial review." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000); *see also Short v. Klein Indep. Sch. Dist.*, Dkt. No. 025-R10-01-2021 (Comm'r Educ. 2021) ("Moreover, school boards are the ultimate interpreters of their own local policies."). Furthermore, there is no "post hoc" interpretation of BISD's policy as alleged by Murphy. Murphy Brief at pp. 19-20. Defendants' interpretation of DEA(Local) has been consistently applied since the COVID-19 pandemic including payments to employees with whose work required consistent, prolonged exposure to the public during the District's period of modified operations and Mr. Samuels' Level II Decision reiterating that same interpretation. ROA.711, 874-892.

Finally, because neither Board policy nor the Board's March 24, 2020, Resolution provide Murphy with a guaranteed government benefit, he cannot prove

27

that he held a protected property interest in premium pay, which would obviate the need for notice and opportunity to be heard. *See Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003). The Court should decline Murphy's invitation to impose liability on Defendants because nothing in the summary judgment record demonstrated any legitimate entitlement to premium pay for Murphy or that he held any protected property interest that necessitated an opportunity to be heard. This Court should affirm the district court's judgment in Defendants' favor on Murphy's substantive and procedural due process claims.

**D.    *The District Court Properly Granted Summary Judgment on Murphy's Constitutional Claims Against BISD as he Failed to Establish Municipal Liability.***

In order to establish a Section 1983 claim against BISD, Murphy must prove municipal liability pursuant to *Monell*, 436 U.S. at 694. Municipal liability requires proof of three elements: "a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Akins v. Liberty County*, 2014 WL 105839, at *9 (E.D. Tex. 2014) (quoting *Piotrowski,* 237 F.3d at 578). Municipal liability under Section 1983 cannot be established for an employee's misconduct based on *respondeat superior* or vicarious liability theories. *Monell*, 436 U.S. at 691. Rather, Section 1983 affords relief only when a policymaker's actions have deprived an individual of his constitutional rights due to an official policy or custom of the governmental entity. *Id*. at 694.

28

BISD Board policy DEA (Local) establishes compensation and benefits for all District employees. ROA.852-853, 857-858. BISD's Board passed a Resolution delegating final authority to Dr. Allen to make all decisions as to compensation for employees who may be required to work during an emergency closure or period of modified operations. ROA.853, 870-872. Thus, Murphy is left to establish municipal liability through assertions of an official custom, practice, or pattern. *Rivera*, 349 F.3d at 248. Murphy must also establish that his alleged constitutional injury was caused by the execution of an official policy, toleration, or approval by some person or entity that has final policymaking authority for the District. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753-54 (5th Cir. 1993). In other words, there must be a direct causal link demonstrated between the alleged action and the deprivation of federal rights. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-404 (1997).

Murphy acknowledges that BISD's Board expressly delegated authority to Dr. Allen through its Resolution specifically regarding compensation during an emergency closure or period of modified operations. Murphy Brief at pp. 25-26. This should be the end of the inquiry because, as explained in detail above, Murphy fails to identify *any* record evidence that the District underwent an emergency closure. During BISD's period of modified operations, Dr. Allen's actions were not arbitrary but rather entirely reasonable and within the delegated authority provided to her by

the Board to make decision regarding compensation for employees who may be required to work with prolonged exposure to the public during a period of modified operations. ROA.852-853, 870-872. As explained above, Murphy did not have a legitimate claim of entitlement to premium pay and therefore, no constitutional deprivation to directly link to any governmental action. Therefore, this Court should affirm the district court's grant of summary judgment in Defendants' favor as to Murphy's municipal liability claim.

### E.    The District Court Properly Granted Summary Judgment on Murphy's First Amendment Retaliation Claim.

Defendants moved for summary judgment on Murphy's First Amendment retaliation claim. ROA.575-582. This Court should affirm summary judgment on this claim because Murphy fails to identify any summary judgment evidence that demonstrates the existence of an official policy or custom that violated his First Amendment rights, much less that he spoke out on a matter of public concern and was terminated for doing so.

1. <u>Murphy did not identify any policy or custom as the moving force behind his First Amendment retaliation claim.</u>

The district court correctly identified that Murphy "does not identify any policy or custom in his Third Amended Complaint or in his response to Defendants' motion for summary judgment as the moving force behind BISD's alleged First Amendment retaliation" and that "Murphy has not advanced or identified any

summary judgment evidence that would support the finding of the existence of an official policy or custom." ROA. 1168. In fact, the district court further noted that "Murphy completely omits any reference to the requirements for governmental liability as it pertains to his First Amendment claim[,]" which "[s]tanding alone is sufficient grounds for granting summary judgment on his First Amendment claim." ROA. 1168. Additionally, Murphy made no substantive argument to support his First Amendment retaliation claim before the district court. *Id*.

As previously stated, under Texas law, final policymaking authority for an independent school district rests with its board of trustees. *See Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing TEX. EDUC. CODE § 11.151(b)); *Rivera*, 349 F.3d at 247. As the district court rightfully pointed out, the Board's Resolution by its very terms empowered Dr. Allen to act "in the place of" the Board. ROA. 870-871, 1167. Here, BISD's Board approved a Resolution permitted Dr. Allen to make final decisions *regarding employee compensation and decisions interpreting Board policy DEA (Local)* thereby making her the *final* policymaking authority over the subject matter outlined in the Resolution for purposes of Section 1983. *Id*. (emphasis added). Dr. Allen's delegated authority expired in the spring of 2020, when the period of modified operations ended as demonstrated by the Resolution language and Murphy's claim for premium pay through May 28, 2020. ROA.870-872, 969. There is *nothing* in the

31

record that proves the Board delegated final policymaking authority to Dr. Allen for any other reason than that outlined in the Board's Resolution. ROA.1169-1170. Furthermore, all of the alleged retaliatory acts—December 2020 petition (ROA.467), August 2021 write-up (ROA.750), summer 2021 overtime denial (ROA.746-747, 924), and February 2022 termination (ROA.725-726) all occurred well after Dr. Allen's delegated authority expired in the spring of 2020 (ROA.870-872, 969, 1170).

With that in mind, the district court reasoned that because Murphy intimated in his deposition that there existed a pattern of unconstitutional conduct that Dr. Allen, as a final policymaker, can fairly be said to have known of and accepted the alleged conduct, that Murphy must then demonstrate that Dr. Allen's policymaking authority extended to Murphy's First Amendment claim. 1167. Murphy did not. ROA.1170. Finally, Murphy contends that Norman's declaration, in addition to his own experience, provides proof of a pattern and practice of retaliatory conduct by BISD. Murphy Brief at p. 28. However, Murphy fails to show that such incidents that both Norman and he allegedly experienced "are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school district] employees.'" ROA.1174.

Separate and apart from Murphy's failure to identify an official policy or custom by a final policymaker, the record clearly demonstrates that summary judgment was profoundly justified as to this claim because Murphy did not speak out on a matter of public concern and was terminated for violating Board policy.

2.  <u>Murphy did not speak out on a matter of public concern.</u>

The Court should affirm summary judgment on Murphy's First Amendment retaliation claim because Murphy did not speak out on a matter of public concern and was terminated because he threatened to blow up BISD's Maintenance Department and failed to cooperate in the District's investigation in violation of Board policy.

In order to establish a First Amendment retaliation claim, Murphy was required to show that: (1) he suffered an adverse employment action; (2) he spoke out on a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the government's interest in the efficient provision of public services; and (4) his protected speech motivated the adverse employment action. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). Murphy was also required to show that his protected speech was a motivating factor in his discharge. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Thereafter, the burden shifts to BISD to show by a preponderance of the evidence

that it would have come to the same conclusion in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

BISD acknowledges in the district court that Murphy's termination constituted an adverse employment action. However, Murphy failed to satisfy the remaining elements of his claim. Murphy contends without citing any case law or evidence that "[o]rganizing employees, circulating petitions, and discussing civil rights history were not part of Murphy's ordinary job duties as a carpenter" that he was then speaking as a citizen on a matter of public concern and not as an employee. Murphy Brief at p. 36. However, this position ignores the very subject of Murphy's speech. As to the public concern element, two inquiries are relevant—a public employee must first show he was speaking as a private citizen and not an employee, and if he spoke as a citizen, the public employee speech is protected so long as his speech "raised a matter of public concern." *Gibson v. Kilpatrick*, 838 F.3d 476, 481-82 (5th Cir. 2016). Communication "rises to the level of public concern if a person speaks *primarily* as a citizen rather than as an employee." *Dorsett v. Bd. of Trustees State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991) (emphasis added). Public concern is determined by examining the whole record and looking at the speech's content, form, and context. *Lane v. Franks*, 573 U.S. 228, 241 (2014). "[W]hether an employee's petition relates to a matter of public concern will depend

34

on 'the content, form, and context of [the petition], as revealed by the whole record." *Connick*, 461 U.S. at 147-48, & n.7.

Speech made privately between a speaker and his employer rather than in the context of public debate is generally not of public concern. *See, e.g., Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817-18 (5th Cir. 2000) (holding that because plaintiff expressed concerns in internal grievances rather than in a public announcement weighed against finding the speech was public in nature). Additionally, "[s]peech is not on a matter of public concern if it is made solely 'in furtherance of a personal employer employee dispute.'" *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (citing *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000)). Furthermore, the focus is on whether the speech at issue is made primarily in the plaintiff's role as a citizen or primarily in his role as an employee. *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 n.2 (5th Cir. 1982).

Murphy alleges three types of speech: (1) he circulated a petition among coworkers related to premium pay; (2) he spoke to his supervisor about working additional overtime; and (3) he spoke to coworkers in the breakroom about civil rights, the civil rights movement, and what he observed as a youth growing up in Alabama. Murphy Brief at pp. 31-36; ROA.464-467. None of his expressions were related to a matter of public concern.

a. *Murphy's alleged petition.*

Murphy claims he circulated a petition around Christmas 2020 (never produced by Murphy in discovery and not part of the record) that he described as concerning a routine employer-employee dispute—employee compensation and that he filed a grievance with BISD related to the same compensation issue. Murphy Brief at pp. 32-33; ROA.465, 707-708, 907. The purpose of Murphy's petition was to gather a list of names of employees, including himself, who had a dispute with the District related to their compensation. ROA.465. Based upon the summary judgment evidence, it is apparent that Murphy was speaking as an employee, rather than a citizen, on a matter that solely related to his personal employment—receiving compensation for work—which does not implicate the First Amendment as a matter of law. *See Ayoub v. Tex. A & M Univ.*, 927 F.3d 834, 838 (5th Cir. 1991) (finding employee's concerns regarding his own compensation not a matter of public concern under the First Amendment). Furthermore, the private nature of the petition being distributed only to District employees weighs against the conclusion that the speech involved a matter of public concern. *See Chavez v. Brownsville Indep. Sch. Dist.*, 135 Fed. App'x 664, 674 (5th Cir. 2005) ("The form of the speech was private as the memorandum was only distributed to BISD employees."). Reviewing the content, form, and context, all factors weigh against a finding that the petition

36

Murphy purportedly circulated at work constituted speech on a matter of public concern.

Murphy contends that his petition and advocacy of premium pay involves "potential misuse of public resources" which he claims is a matter of public concern and cites to his own Complaint as summary judgment "evidence." Murphy Brief at pp. 33-34. Unfortunately for Murphy, allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."). Furthermore, conclusory allegations unsupported by evidence do not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 713 (5th Cir. 1994).

b. *Overtime inquiry.*

Murphy contends that in the summer of 2021 he asked his supervisor about overtime opportunities and claims that overtime was thereafter discontinued. Murphy Brief at pp. 10, 14, 29; ROA.465. Murphy testified that Dr. Allen published a letter stating that the District was short-handed in the custodial department and that if employees wanted to work extra they could. ROA.908-909. Notably, Murphy was not a custodian but rather a carpenter. *Id*. An email was in fact issued in September 2021 regarding "temporary custodial support" opportunities, but in order to be considered individuals were required to complete temporary custodial support forms. ROA.924. Murphy failed to identify any evidence that he filled out and

37

submitted custodial support forms to BISD, and did not identify who made decisions regarding said overtime. ROA.910.

Mr. Devault, who actively monitors and oversees BISD's Maintenance Department's financials and budget, testified that there was a project that arose in the summer of 2021 that did not require the utilization of all craftsmen within the Department so only a few craftsmen were selected at random; however, the project was ultimately completed without the use of overtime. ROA.746-747. When Murphy inquired about overtime on that project, Mr. Devault told him that those who were not assigned to the current project would get the first offers for overtime on the next project. *Id.* Murphy's overtime inquiries to his supervisor do not constitute protected speech as they were made internally at BISD and solely related to the opportunity to earn overtime. *See Ayoub*, 927 F.3d at 838. Again, reviewing the record as a whole, the content, form, and context weigh against a finding that Murphy's overtime inquiries related to a matter of public concern and are therefore not protected by the First Amendment. *See Thomas v. Beaumont Indep. Sch., Dist.*, 627 Fed. App'x. 332, 336 (5th Cir. 2015).

### c. *Breakroom comments to coworkers.*

Lastly, Murphy's alleged breakroom comments vary widely by his own account. Murphy alleges in his Complaint that his breakroom speech related to "the District's attempt to police speech," (ROA.465) then he alleges that same speech

38

was "about issues in the District with the District's failure to fairly give raises and that certain black workers were being asked to work harder than their white associates," (ROA.466) and finally, that his speech involved discussions of "the Civil Rights movement" including Murphy's own experience growing up in Alabama and a church being bombed (ROA.466). Murphy Brief at pp. 32-33, 46. Despite these varied allegations, Murphy then testified that his breakroom commentary to coworkers was "because it was Black History Month, [he] just wanted to say what happened to [him] as a child, and that was it." ROA.919-922. Murphy testified that the discussion took place on February 9, 2022—the day he was arrested—and that his coworkers were talking about "civil rights," and he was "just listening." ROA.920. "I said, I was born and raised in Alabama, where I saw people hung, men, women, and children, and that the church that I attended was bombed by the Ku Klux Klan where four young girls were killed." *Id*. Murphy's testimony is a creative (but transparent) effort to suggest that his use of the word "bomb" was related to what he witnessed when he was a child as opposed to what his coworkers clearly heard him say—that he was going to blow up BISD's Maintenance Department (ROA.840-845).

The form and context of Murphy's breakroom speech lacks those characteristics which clearly point in the direction of classifying the speech as being a matter of public concern. Murphy's speech in the breakroom was not made in any

39

kind of traditional public form. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) (letter to a newspaper); *Perry v. Sindermann*, 408 U.S. 593 (1972) (legislative testimony). To the extent Murphy's breakroom discussion was regarding his childhood, his was on a private, personal matter.

Furthermore, the summary judgment record demonstrates that at no point prior to Murphy's termination were Mr. Basinger (individual who placed Murphy on leave) or Mr. Samuels (individual who terminated Murphy) aware that Murphy discussed civil rights, the civil rights movement, or his childhood in Alabama with his coworkers. ROA.592, 810. Additionally, because Murphy refused to cooperate in the District's investigation, Murphy provided no information to the District as to what his alleged speech was about. ROA.725-726, 840-843. In fact, none of the individuals present in the breakroom noted any discussion by Murphy of the Civil Rights movement or Murphy's childhood. ROA.799-804, 844-845. Instead, those present in the break room completed statements noting that Murphy talked about putting a bomb on a remote control car and blowing up BISD's Maintenance Department. ROA.792-806, 844-845.

As to threats, the Supreme Court has long recognized that the Constitution permits government to proscribe "true threats." *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment"). True threats encompass those statements were the speaker means to communicate a

40

serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *Virginia v. Black*, 538 U.S. 343, 360 (2003). Therefore, "in any context, a true threat is not protected by the First Amendment." *O'Neal v. Alamo Cmty. College Dist.*, 2010 WL 376602, at * 12 (W.D. Tex. 2010). Here, Murphy was found to have made terroristic threats against BISD's Maintenance Department which caused an immediate reaction of fear that caused major concern and placed numerous staff members in imminent serious bodily injury. ROA.794, 809-810, 840-847. Murphy's true threat is never protected by the First Amendment as a matter of law. Because Murphy cannot offer any evidence that he engaged in speech on a matter of public concern, the district court's grant of summary judgment as to Murphy's First Amendment retaliation claim is appropriate.

3. Murphy's interest in speaking did not outweigh BISD's interest in the efficient provision of public services.

Murphy was also required to show that his interest in speaking on a matter of public concern outweighed BISD's interest in promoting efficiency in the provision of public services. Courts consider the manner, time, and place of the speech as well as the context in which the dispute arose. *Victor v. McElveen*, 150 F.3d 451 (5th Cir. 1998). Courts also consider factors such as whether the speech at issue was likely to generate controversy and disruption, impede the school's general performance and

41

operation, and affect working relationships necessary to the school's proper functioning. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir. 1999).

As stated above, Murphy did not engage in any speech on a matter of public concern. Neither Murphy nor any other witness reported that Murphy was speaking on a matter of public concern during the District's investigation. Instead, witnesses solely reported that Murphy made a terroristic threat. ROA.792-806, 840-847. Murphy's threat to blow up BISD's Maintenance Department cannot, under any circumstances, outweigh BISD's right to promote efficiency in the workplace. Murphy's threat clearly caused disruption and impeded BISD's ability to promote efficiency in the workplace as an institution of public education. ROA.792-806, 840-847. Because Murphy cannot offer any evidence that he engaged in speech on a matter of public concern that outweighed BISD's interest in promoting efficiency in the workplace, the district court's grant of summary judgment as to Murphy's First Amendment retaliation claim is appropriate.

4. BISD terminated Murphy because he violated Board policy.

Finally, Murphy was also required to establish that his protected speech was the substantial/motivating factor in his alleged adverse employment action. Murphy was not written up, placed on leave, or terminated because he reportedly circulated a petition, inquired about overtime, or because he talked about his childhood in Alabama. Rather, the decision to write Murphy up was because his work was

42

substandard for a competent craftsman. ROA. 746. Additionally, the decision to place Murphy on administrative leave was due to allegations that Murphy made a terroristic threat in violation of Board policy. ROA.809, 835-838. After an investigation (of which Murphy refused to participate in), Murphy was determined to have violated Board policy by threatening to blow up BISD's Maintenance Department and failing to cooperate with the District's investigation of the matter. ROA.592, 725-726. BISD terminated Murphy for these two policy violations. *Id.*

Even if Mr. Samuels had known Murphy discussed civil rights, the civil rights movement, or his childhood in Alabama, which he did not, he would have still made the decision to terminate Murphy because of the serious nature of his misconduct, which was supported by witness statements, and the fact that he engaged in two terminable offenses. ROA.592, 725-726, 840-847. Because Murphy failed to offer any evidence that his protected speech motivated the adverse employment action, the district court's grant of summary judgment as to Murphy's First Amendment retaliation claim was appropriate.

### F. The District Court Properly Granted Summary Judgment on Murphy's Fourth Amendment Malicious Prosecution Claim.

Defendants moved for summary judgment on Murphy's Fourth Amendment malicious prosecution claim. ROA.582-586. This Court should affirm summary judgment on Murphy's Fourth Amendment claim because Murphy failed to identify

any act by a policymaker or a pattern of unconstitutional conduct with respect to his claim and further, failed to defend this claim before the district court.

1. Murphy failed to address his Fourth Amendment claim before the district court.

Defendants argued in their Motion for Summary Judgment that Murphy's malicious prosecution claim under the Fourth Amendment should be dismissed for various reasons. ROA.582-586. As the district court properly pointed out, "Murphy's response [to Defendants' Motion for Summary Judgment] does not address his Fourth Amendment claim at all." ROA. 1171. Accordingly, since Murphy failed to respond to Defendants' arguments related to his Fourth Amendment claim, he abandoned his malicious prosecution claim. *See Terry Black's Barbecue, L.L.C. v. State Auto Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022).

2. Murphy failed to identify an act by a policymaker or a pattern of unconstitutional conduct with respect to his Fourth Amendment claim.

A plaintiff advancing liability on the grounds of a custom, as opposed to a policy, must demonstrate that "[a]ctual or constructive knowledge of [a] custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 842); *see Cox v. City of Dallas*, 430 F.3d 734, 749 n.53 (5th Cir. 2005); *Rivera*, 349 F.3d at 249. Indeed, "[p]roof of a custom and knowledge of that custom are separate elements." *Garcia v. Contreras*, No. C-07-359, 2008 WL

44

4646897, at *9 n.8 (S.D. Tex. Oct. 20, 2008) (citing *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002)); *accord Cox*, 430 F.3d at 749; *Rivera*, 349 F.3d at 249; *Garcia v. County of El Paso*, 79 F. App'x 667, 669-70 (5th Cir. 2003). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842; *accord Bennett*, 728 F.2d at 768. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Bennett*, 728 F.2d at 768. To support his Fourth Amendment claim, Murphy boldly claims while citing only to his Complaint that "Shannon Allen is, therefore, as a matter of law a policymaker for the District police" because Dr. Allen "paid the police department premium pay." Murphy Brief at pp. 38-39. Once again, allegations in Murphy's Complaint are not evidence. *See Wallace*, 80 F.3d at 1047.

"Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Webster*, 735 F.2d at 842 (quoting *Bennett*, 728 F.2d at 768). As the district court pointed out, for the same reasons discussed with respect to

Murphy's First Amendment claim, any knowledge must be attributable to BISD's Board, as opposed to Dr. Allen as she was delegated specific final authority only to what the Board outlined in its Resolution—compensation to employees who engage in work that required consistent, prolonged exposure to the public during the District's period of modified operations. ROA.852-853, 857-858, 860-872. The district court rightfully identified the fact that there is no summary judgment evidence demonstrating that Dr. Allen was the final policymaker regarding responding to potential threats against the school *e.g.*, Murphy's terroristic threat against BISD facilities, employees, and students. ROA.1169-1170. Furthermore, Murphy makes no attempt to identify or advance any evidence or prove that BISD's Board is responsible for his alleged false arrest either.

What Murphy does claim is that Norman's declaration supports his Fourth Amendment claim and his allegation that Defendants falsely accused him of a crime in order to support his termination. Murphy Brief at pp. 39-40. However, Norman's declaration focuses only on Murphy's First Amendment claim and makes no reference to a false arrest or false accusation to support Murphy's termination. ROA.1073-1074. In fact, Norman was Murphy's arresting officer wherein he as a peace officer under the law of Texas and duly sworn, completed a probable cause affidavit that served as the basis for Murphy's arrest. ROA.794. The district court properly noted that even if Murphy had successfully demonstrated that he and

46

Norman were both subject to retaliation by BISD, which he did not, Murphy failed to show that such incidents "are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school district] employees.'" ROA.1174 (citing *Robinson v. Midland Cty.*, 80 F.4th 704, 710 (5th Cir. 2023) (quoting *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir.2023)), *cert. denied*, 144 S. Ct. 1010 (2024)).

   3. <u>Murphy's Fourth Amendment claim was not viable at the time Murphy was prosecuted.</u>

To the extent Murphy's perfunctory allegations in his Complaint are sufficient to guard against forfeiture of his Fourth Amendment claim on appeal, the record clearly demonstrates that summary judgment was profoundly justified as to this claim. Murphy was arrested on February 9, 2022. ROA.793-794. At the time of Murphy's arrest, this Court did not recognize a Fourth Amendment malicious prosecution claim. In 2022, the Supreme Court "held that litigants may bring a Fourth Amendment malicious prosecution claim under Section 1983." *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (citing *Thompson v. Clark*, 596 U.S. 36, 42 (2022)). It was not until *Armstrong*, that the Fifth Circuit recognized a Fourth Amendment malicious prosecution claim and determined that a plaintiff must plead and prove the following elements to prevail:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Armstrong*, 60 F.4th at 280. "Importantly, because an unlawful seizure is a threshold element, *see Thompson*, 596 U.S. at 43, n.2, if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Armstrong*, 60 F.4th at 279, n.15. Murphy should not have brought his Fourth Amendment malicious prosecution claim as it was not a viable claim at the time he was arrested.

    4. <u>Murphy's prosecution was supported by probable cause</u>.

Murphy's prosecution for making a terroristic threat was supported by probable cause and therefore, for that reason alone, summary judgment is appropriate on this claim. *Id*. Probable cause to arrest is not a "high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause only requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Generally, the return of an indictment by a grand jury establishes probable cause to believe that the accused committed the offense charged. *Casanova v. City of Brookshire*, 119 F. Supp.2d 639, 654 (E.D. Tex. 2000). According to this Court, "an officer who acted with malice in procuring the warrant or the indictment will not be liable if the facts supporting the

warrant or indictment are put before an impartial intermediatory…for that intermediary's independent decision breaks the causal chain and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988).

> A person violates Section 22.07 of the Texas Penal Code when he/she:
>
> threatens to commit any offense involving violence to any person or property with intent to: (1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies; (2) place any person in fear of imminent serious bodily injury; (3) prevent or interrupt the occupation or use of a building, room, place or assembly, place to which the public has access, place of employment or occupation, aircraft, automobile, or other form of conveyance, or other public place; (4) cause impairment or interruptions of public communications, public transportation, public water, gas, or power supply or other public service; (5) place the public or a substantial group of the public in fear of serious bodily injury; or (6) influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state.

Tex. Pen. Code 22.07(a)(1)-(6). Here, there was ample evidence for BISD's police to form a reasonable belief that Murphy's conduct violated Section 22.07. Norman attested in support of a warrant for terroristic threat that "statements were made in a public place with a substantial group of personnel, caused an immediate reaction of fear" and Murphy's "threats involved violence which caused a major concern and placed numerous staff members in imminent serious bodily injury." ROA.794. Several witnesses reported that Murphy said, "he would drive a remote controlled car in the parking lot and blow this mother fucker up" and that Murphy was "speaking on how he would blow the place up" when referring to BISD's

49

Maintenance Department. ROA.796-804. Probable cause is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Furthermore, probable cause turns "on the assessment of probabilities in particular factual context—not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 371. Here the officer involved (Norman) reasonably believed he had probable cause to arrest Murphy. ROA.794.

Additionally, under the independent-intermediary doctrine, "'if facts supporting an arrest are placed before an independent intermediatory such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). Murphy cannot prove lack of probable cause because a separate intermediatory also determined the existence of probable cause. Here, the Jefferson County Assistant Criminal District Attorney determined that probable cause existed to prosecute Murphy. ROA.926-927. Murphy acknowledged this undisputed fact during his deposition. ROA.918.

5. <u>Murphy offered no evidence that Defendants acted with malice.</u>

Murphy failed to offer any facts showing that BISD acted with malice, and the undisputed summary judgment evidence shows that Dr. Allen was not involved in his arrest or criminal prosecution. Murphy alleges that he was falsely accused of

criminal activity in a "malicious manner" with the goal of the District and Superintendent being able to support his termination. ROA.469. "Malice" should be a high bar so as to shock the conscience and rise to the level of a constitutional violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). As an initial point, Dr. Allen was not involved whatsoever in Murphy's arrest or prosecution, and despite Murphy's allegation that Dr. Allen is a "policymaker for the District police" he is mistaken. ROA.852-853. The Board is the sole and exclusive policymaker for the District, including its Police Department. *See* ROA.852; *see also* Tex. Educ. Code §§ 11.151(b), 37.081; *Jett*, 7 F.3d at 1245.

Mr. Devault contacted BISD's Police Department after he received a report from two employees that Murphy made a threat of violence that caused an immediate reaction of fear. ROA.747, 794. Thereafter, Norman executed an affidavit for Murphy's arrest based on probable case as a result of the information provided and arrested Murphy. ROA.794. BISD's administration also initiated an investigation into the allegations that Murphy made a terroristic threat. ROA.840-847. Murphy had an opportunity to respond to the allegations and refused to do so. *Id*. Accordingly, since Murphy refused to cooperate with the investigation, there was no evidence to disprove the allegation that Murphy made a terroristic threat. ROA.809-810, 840-847. Murphy was subsequently terminated because he threatened to blow up the Maintenance Department and refused to cooperate with a District

investigation in violation of Board policy. ROA.592, 725-726. Murphy was not terminated because he was arrested. *Id*. Accordingly, because Murphy cannot prove the elements of his Fourth Amendment malicious prosecution claim, this Court should affirm the district court's summary judgment in Defendants favor.

### G.   The District Court Correctly Found that Dr. Allen was Entitled to Qualified Immunity.

Murphy sued Dr. Allen in her individual capacity, asserting the same four claims he asserted against BISD. ROA.463-472. Dr. Allen asserted the affirmative defense of qualified immunity in Defendants' Motion for Summary Judgment. ROA.586-587. This Court should affirm summary judgment on all claims asserted against Dr. Allen because Murphy failed to prove a constitutional violation and furthermore, Murphy failed to identify any action taken by Dr. Allen regarding his First and Fourth Amendment rights.

Murphy contends that the district court: (1) failed to view the evidence in the light most favorable to him as the non-moving party; (2) failed to recognize Murphy's legitimate property interest in premium pay; (3) concluded that Murphy's speech did not involve matters of public concern; and (4) failed to recognized that Dr. Allen's delegated authority did not permit her to violate clearly established constitutional rights. Murphy Brief at p. 49. In order to state a personal-capacity claim under Section 1983, Murphy was required to prove that while acting under color of state law, Dr. Allen was personally involved in the deprivation of a right

secured by the laws or the Constitution of the United States, or that Dr. Allen engaged in wrongful actions that were causally connected to such a deprivation. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir, 2008). "Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000). The qualified immunity analysis requires a determination of (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). When a defendant invokes qualified immunity, the burden is then on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Murphy failed to do so.

As discussed above, there was no constitutional deprivation as Murphy failed to identify any summary judgment evidence that Dr. Allen failed to follow District policy in relation to premium pay during the District's period of modified operations. ROA.852-853, 857-858, 860-872. Furthermore, the district court rightfully noted that as to Murphy's First and Fourth Amendment claims, Murphy "unequivocally" failed to identify any action, or connect Dr. Allen in any manner to violation of those

rights in his Response or Sur-reply. ROA.1183. This Court should affirm summary judgment on all claims asserted against Dr. Allen.

## CONCLUSION AND PRAYER

Defendants-Appellees Beaumont Independent School District and Dr. Shannon Allen request that the Court affirm the September 25, 2024, Final Judgment of the United States District Court for the Eastern District of Texas, Beaumont Division.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

s/Paul A. Lamp
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
MELISSA M. GOINS
State Bar No. 24074671
Federal I.D. 2089537
mgoins@snll-law.com
3700 Buffalo Speedway, Ste 500
Houston, Texas 77098
Telephone: (713) 993-7066
Facsimile: (888) 726-8374

*Attorneys for Defendants-Appellees*
*Beaumont Independent School*
*District and Shannon Allen*

54

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I electronically filed the foregoing with the Fifth Circuit using the CM/ECF system and addressed as follows:

Brandon P. Monk
The Monk Law Firm
4875 Parker Drive
Beaumont, Texas 77705

Lawrence Watts
Watts & Company, Ltd
P.O. Box 2214
Missouri City, Texas 77459
Attorneys for Plaintiff-Appellant

s/Paul A. Lamp
Attorney for Defendants-Appellees
Beaumont Independent School
District and Shannon Allen

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 12,234 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size-14 Times New Roman font.

/s/ Paul A. Lamp
Attorney for Defendants-Appellees
Beaumont Independent School
District and Shannon Allen
May 8, 2025